IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROGER L. MACKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-703-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Roger L. Mackey ("Mackey"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Mackey's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Mackey appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Mackey was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

Mackey was 47 years old at the time of the first hearing on September 3, 2010, and he was 49 years old at the time of the second hearing on February 5, 2013. (R. 47, 69, 212). Mackey testified that he had a tenth grade education and a GED. (R. 73). Mackey reported an

inability to work due to pain and problems with his arms and hands. (R. 80). He said that he had difficulty sitting and walking for prolonged periods. *Id.*

Mackey testified that he experienced pain in his shoulders, arms, and elbows. (R. 56, 82). He occasionally experienced neck pain. (R. 82). Mackey's arms and elbows locked up on him. (R. 54, 56, 81). He experienced numbness and swelling in his hands, which made his fingers sensitive to touch. (R. 54, 60). Mackey stated that he was losing the strength in his arms and the functioning of his hand. (R. 54, 59-60). Mackey reported difficulty lifting due to problems with his arms and hands. (R. 54, 87). Mackey experienced pain with continuous arm movement. (R. 88-89). Numbness and swelling in Mackey's hands caused him to drop things. (R. 84). He stated that he was unable to hold a glass due to gripping problems. (R. 59). Mackey said that he could lift about 50 pounds, but he could not carry it. (R. 87-88).

Mackey reported difficulty standing due to back pain and swelling in his knees. (R. 86-87). He reported swelling and numbness in his feet. (R. 54, 59-60). Mackey experienced sensitivity in his toes, which made them uncomfortable to touch. (R. 54). He had difficulty wearing shoes due to problems with his feet. *Id.* Mackey reported difficulty walking and balancing. (R. 56, 86). Bending over and constant motion created pain in Mackey's back and legs. (R. 89).

Mackey testified to difficulty breathing. (R. 60). He could walk about 600 feet before needing to stop due to shortness of breath. *Id.*

Mackey reported difficulty sleeping due to pain. (R. 58, 89). He generally only slept for about two hours at night due to pain. (R. 58). He took frequent naps throughout the day. (R. 58-59, 90).

Mackey testified that he was treated by Dr. Tucker for symptoms of osteoarthritis in March 2012. (R. 54, 80-81). Mackey stated that Dr. Tucker gave him with a cortisone shot in his left shoulder and that it did not help. (R. 57, 82). Dr. Tucker prescribed medications for depression, pain, inflammation, and insomnia, and they made Mackey drowsy. (R. 58-59, 79-81). Mackey stated that his medical insurance only allowed him five office visits with Dr. Tucker per year, so he phoned Dr. Tucker for medication refills. (R. 55, 81).

In describing his daily activities, Mackey said that he watched television, played with his grandchildren, and visited with a friend. (R. 58, 93). He was able to do the laundry, cook, and grocery shop. (R. 91-93). He mowed his yard using a riding lawn mower, but he could only do that for about 30 minutes at a time. (R. 91). He would drive a car between 20 to 30 minutes to visit his daughter. (R. 93-94). On nice days, he would sit outside, spend time in his shop, and walk around. (R. 90). During cold weather, he tried to stay inside. (R. 57-58). Mackey was unable to carry his grandchildren, because he was fearful of dropping them or falling on top of them. (R. 54, 61-62, 90). Mackey reported difficulty showering. (R. 54).

On December 15, 2005, Mackey saw Rebecca C. Lewis, D.O., for complaints of knots in his shoulders and low back pain. (R. 302-03). Assessments were low back pain and shoulder pain. (R. 302).

On January 26, 2006, Mackey saw David J. Tucker, M.D., for an office visit for complaints of multiple joint pain and a history of osteoarthritis (R. 328-29). Dr. Tucker said that Mackey had a history of multiple joint problems, had problems with osteoarthritis, had been on multiple pain relief medications, and had a negative rheumatoid panel. (R. 328). Dr. Tucker said that on examination there was a marked tenderness of both knees and both shoulders, together with tenderness of the paracervical neck muscles. *Id.* Dr. Tucker said that Mackey's hands

3

showed some mild osteoarthritic changes. *Id.* He said that x-rays of the cervical spine, shoulder, and knee showed moderate osteoarthritic changes. *Id.* Dr. Tucker gave a Depo Medrol injection and prescribed pain relief medications. *Id.*

A note from Dr. Tucker's office dated February 8, 2006 says that Mackey was concerned about the amount of prednisone he was taking. (R. 326-27).

On February 14, 2006, Dr. Tucker wrote a To Whom It May Concern letter stating that Mackey had a history of severe osteoarthritis of multiple joints. (R. 330). Dr. Tucker wrote that, while he hoped that medication would give Mackey some relief and control of the pain, Dr. Tucker's opinion was that Mackey was "permanently disabled for any type of moderately strenuous activities and working." *Id.*

At his appointment with Dr. Tucker on January 2, 2007, Mackey complained of increased arthritis pain and difficulty walking. (R. 324-25). He reported tenderness and swelling of his right foot. *Id.* Dr. Tucker's impression was degenerative joint disease, "doing well." *Id.* Dr. Tucker prescribed medication. *Id.*

Mackey saw Dr. Tucker on September 24, 2007, for upper abdominal pain and decreased appetite. (R. 322-23). Dr. Tucker told Mackey to discontinue taking Piroxicam for his arthritis. (R. 322). Dr. Tucker ordered an abdominal ultrasound which revealed acute cholecystitis and cholelithiasis. (R. 322, 331-32). Dr. Tucker prescribed an antibiotic and made a referral to Philip A. Woodworth, M.D., for surgical consultation. (R. 322-23).

On October 2, 2007, Dr. Woodworth examined Mackey and recommended laparoscopic cholecystecteomy surgery. (R. 333). Mackey saw Dr. Woodworth for a postoperative examination on October 30, 2007. (R. 335). Dr. Woodworth noted that Mackey was "doing very well." *Id.* Dr. Woodworth released Mackey to resume full activity on November 12, 2007. *Id.*

Mackey was seen by Dr. Tucker on December 5, 2007, and Dr. Tucker's impressions included degenerative joint disease. (R. 320-21).

Dr. Tucker examined Mackey on August 4, 2008, and diagnosed degeneration of cervical intervertebral disc, osteoarthritis, and insomnia. (R. 316). Piroxicam, tramadol, and trazodone were prescribed. *Id.*

Mackey saw Dr. Tucker on October 2, 2008, for increased joint pain, neck pain, arthritis in his knees and ankles, heel spurs, and arm spasms. (R. 317). Mackey reported difficulty standing for prolonged periods of time. *Id.* He experienced arm pain and leg pain during the nighttime hours, and he reported difficulty sleeping. *Id.* On examination, Dr. Tucker noted osteoarthritic changes of the hands, elbows, and wrists, as well as "significant" changes of his knees. *Id.* Mackey had marked tenderness in his lower lumbar spine. *Id.* Dr. Tucker wrote that he "encouraged [Mackey] to go ahead and apply for disability, as he certainly is not going to be able to do the type of manual labor he is used to much longer." *Id.* Dr. Tucker prescribed medications. *Id.*

Dr. Tucker continued to prescribe Mackey medications on a monthly basis in 2009 and 2010. (R. 309-10, 341-45, 347-70). Mackey's listed medications were Desyrel, Feldene, Flexeril, Lyrica, Mobic, and Ultram. *Id.*

Mackey saw Dr. Tucker on September 15, 2010, for pain and increased difficulties of his shoulders, right knee, lower back, and neck, and x-rays were taken. (R. 405-08). On examination, Mackey had diffuse joint tenderness of most joints, marked osteoarthritis changes of his hands and feet, and markedly decreased range of motion of his cervical spine and lumbar spine. (R. 407). Dr. Tucker said that x-rays showed degenerative joint disease and degenerative disc disease of the cervical and lumbar spines, and he noted osteoarthritic changes reflected in x-

rays of Mackey's right knee and shoulders. *Id.* Dr. Tucker's impression was osteoarthritis of multiple joints, and he said that Mackey was "unable to work at this time." *Id.*

At a May 26, 2011, appointment with Dr. Tucker, Mackey needed refills of his medication, and Dr. Tucker noted his ongoing problems with his arthritis. (R. 409). Dr. Tucker noted that Mackey was taking eight Ultram pills a day and said that Mackey had been stable at that dosage for some time. *Id.* On physical examination, Dr. Tucker noted tenderness, stiffness, and decreased range of motion of multiple joints, "especially knees, ankles, wrists[,] and shoulders." *Id.* Dr. Tucker's impression was osteoarthritis of multiple joints, and he refilled Mackey's prescription of Ultram. *Id.*

On December 1, 2011, Mackey saw Dr. Tucker for refills, and Dr. Tucker noted tenderness and decreased range of motion on examination. (R. 417). His impressions were osteoarthritis of multiple joints; arthritis of the feet; plantar fasciitis; and acromioclavicular arthritis. *Id.* He gave Mackey an injection of Depo Medrol. *Id.*

On March 12, 2012, Dr. Tucker said that Mackey had been having increased problems with pain in his feet and his right shoulder. (R. 415). On examination, Mackey had tenderness, stiffness, and decreased range of motion of multiple joints. *Id.* Dr. Tucker added gabapentin to Mackey's pain medications. *Id.* Dr. Tucker wrote that Mackey had been "unable to work for quite some time." *Id.*

On January 24, 2013, Mackey saw Dr. Tucker for refill of his medications. (R. 43-44, 46). Dr. Tucker noted Mackey's ongoing problems, including pain, and he said that Mackey was having numbness and tingling of his hands and feet. (R. 43). On examination, Mackey had subjective decreased sensation in his feet and toes. *Id.* He had marked arthritic changes in his knees and hands. *Id.* Chest x-rays showed significant changes due to chronic obstructive

pulmonary disease ("COPD").  *Id.*  Dr. Tucker's impressions were osteoarthritis; COPD; neuropathy; and depression.  *Id.*  Several medications were prescribed, and Dr. Tucker ordered nerve conduction and pulmonary function studies.  (R. 44).

Dr. Tucker completed a Physical Medical Source Statement dated February 4, 2013.  (R. 420-21).  Dr. Tucker indicated that Mackey could sit, stand, and walk for 30 minutes at a time and for two hours total for each activity during an eight-hour work day.  (R. 420).  Mackey could frequently lift up to 10 pounds, but could never lift more than that.  *Id.*  Dr. Tucker found that Mackey could occasionally reach, but he could never bend, squat, crawl, or climb.  *Id.*  Dr. Tucker indicated that Mackey's pain and other symptoms would interfere with his attention and concentration for 20% of a typical work day.  (R. 421).  Mackey would need to rest for a period of five to 15 minutes several times during an eight-hour work day.  *Id.*  Dr. Tucker indicated that Mackey would be absent from work more than four days a month due to "bad days."  *Id.*  Dr. Tucker indicated that Mackey had objective findings of reduced range of motion, muscles spasms, tenderness, abnormal gait, and muscle weakness, and he noted that x-rays supported the limitations found on the form.  *Id.*

A pulmonary function test completed on February 7, 2013, showed mild restrictive impairment.  (R. 45).

Mackey saw Miles M. Johnson, M.D., for lower extremity electrodiagnostic nerve conduction testing on February 4, 2013.  (R. 36-41).  Dr. Johnson noted that Mackey appeared to be in mild distress.  (R. 36).  Test results were normal.  (R. 37).  Dr. Johnson said that Mackey's history was suggestive of small fiber sensory neuropathy, and he suggested skin biopsy testing.  *Id.*

On May 19, 2009, agency consultant Mohammed Quadeer, M.D., completed a physical examination of Mackey, and Mackey's chief complaints were joint pain and osteoarthritis of neck, lower back, and small joints of the hands. (R. 372-78). Mackey told Dr. Quadeer that he was taking up to eight tramadol a day, but that it was not helping. (R. 372). On a one-to-ten scale, Mackey stated that his pain was a four with medication, and a nine without it. *Id.* He was taking Flexeril, and it was helping him sleep. *Id.* On examination, Mackey had limited range of motion of his shoulders, his cervical spine, and his lumbar-sacral spine, and the spinal limitations were associated with muscle spasms. (R. 374). Mackey had 5/5 grip strength, and Dr. Quadeer found no swelling of the small joints of the hands. *Id.* He found no effusion or edema of the knees, which he said were stable in all range of motion exercises. *Id.* Gait was safe and stable with appropriate speed. *Id.* On the accompanying backsheet, Dr. Quadeer noted muscle spasm, pain with extension and flexion, and weak toe walking. (R. 378). Dr. Quadeer said that Mackey might have some anxiety and depression. (R. 374). Dr. Quadeer's assessments were:

> 1. Osteoarthritis diagnosed in 2006 involving the joints of the cervical and lumbar spine and also probably the knee joints.
> 2. The small joints of both hands showed no swelling or localized tenderness. The movements are normal without any pain.
> 3. The patient probably has some anxiety.

(R. 374).

Nonexamining agency consultant Janet G. Rodgers, M.D., completed a Physical Residual Functional Capacity Assessment on June 16, 2009. (R. 379-86). Dr. Rodgers found Mackey could perform "light" work, with no postural, manipulative, visual, communicative, or environmental limitations. (R. 380-83). In the section for narrative comments, Dr. Rodgers summarized Dr. Quadeer's consultative examination report in some detail. (R. 380-81).

8

**Procedural History**

On March 24, 2009, Mackey filed his application for disability insurance benefits. (R. 210-15). Mackey asserted an onset of disability on February 9, 2006. (R. 212). The application was denied initially and on reconsideration. (R. 123-26, 129-31). An administrative hearing was held before ALJ John W. Belcher on September 3, 2010. (R. 69-101). Following an unfavorable decision by the ALJ on January 10, 2011, Mackey filed a request for review to the Appeals Council on March 11, 2011. (R. 104-18, 169-72). On June 7, 2012, the Appeals Court granted the request and remanded the case back to the Social Security Administration for further proceedings. (R. 119-22). At a second administrative hearing held on February 5, 2013, Mackey amended his onset of disability to October 2, 2008. (R. 22, 49). ALJ Belcher issued a second unfavorable decision dated March 8, 2013, and the Appeals Council denied further review in an order dated September 17, 2014. (R. 1-6, 22-28). Thus, the March 8, 2013 decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

**Social Security Law and Standard Of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability

claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

### Decision of the Administrative Law Judge

In his decision, the ALJ found that Mackey met insured status requirements through December 31, 2010. (R. 24). At Step One, the ALJ found that Mackey had not engaged in any substantial gainful activity since his alleged onset date of October 2, 2008. *Id.* At Step Two, the ALJ found that Mackey had severe impairments of osteoarthritis of the lumbar spine, knees, and shoulders. *Id.* The ALJ said that the alleged osteoarthritis of the hands and ankles had not been medically determined. *Id.* At Step Three, the ALJ found that Mackey's impairments did not meet any Listing. (R. 25).

The ALJ found that Mackey had the RFC to perform "light" work, noting that Mackey could "frequently finger, handle, feel, and reach overhead bilaterally." *Id.* The ALJ also limited Mackey to avoidance of hazards such as "fast machinery, unprotected heights, and driving." *Id.* At Step Four, the ALJ determined that Mackey could not return to past relevant work. (R. 27). At Step Five, the ALJ found that there were a significant number of jobs in the national economy that Mackey could perform, taking into account his age, education, work experience, and RFC. (R. 27-28). Therefore, the ALJ found that Mackey was not disabled at any time from October 2, 2008 through December 31, 2010. (R. 28).

### Review

Mackey asserts that the ALJ erred in rejecting the opinion evidence of Dr. Tucker. Plaintiff's Opening Brief, Dkt. #20. The undersigned agrees that reversal is required due to errors of the ALJ in his discussion and analysis of the opinion evidence of Dr. Tucker. Therefore, the Commissioner's decision is hereby **REVERSED AND REMANDED**.

An ALJ must discuss more than just the evidence favorable to an opinion that a claimant is not disabled:

> [I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). It is error to ignore evidence that would support a finding of disability while highlighting the evidence that favors a finding of nondisability. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007). In addition to these general principles regarding evidence, an ALJ is required to discuss all opinion evidence and to explain what weight he gives it. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. *Robinson*, 366 F.3d at 1084. A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014). *See also* 20 C.F.R. § 404.1527(c)(2). Even if the opinion of a treating physician is not entitled to controlling weight, it is still entitled to deference and must be weighed using the appropriate factors set out in Section 404.1527. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ is required to give specific reasons for the weight he assigns to a treating physician opinion, and if he rejects the opinion completely, then he must give specific legitimate reasons for that rejection. *Id.*

The undersigned notes that the ALJ began his discussion of the treating evidence of Dr. Tucker on the date of the amended alleged onset date, October 2, 2008. (R. 25). Because the alleged disabling condition of osteoarthritis was one that Dr. Tucker had treated since January 2006, the evidence from before the relevant period was arguably relevant to the validity of Dr. Tucker's opinions, especially given that the length of the treating relationship is the first factor set

12

out by the regulations in discussing the weight to be assessed treating opinions. 20 C.F.R. § 404.1527(c). Records from before the October 2, 2008 amended alleged onset date are also important because the ALJ said in his decision that records before September 2010 did not support a finding of severe arthritis. With that as context, the ALJ should have discussed the objective medical findings that Dr. Tucker made in January 26, 2006 of marked tenderness of both knees and shoulders, and of the paracervical neck muscles. (R. 328). He should have noted that Dr. Tucker's physical examination of Mackey reflected mild osteoarthritic changes of his hands. *Id.* These notes from Dr. Tucker's January 26, 2006 office visit were objective medical evidence that supported Mackey's claims, and they therefore should have been mentioned by the ALJ. *See, e.g., Jones v. Colvin*, 514 Fed. Appx. 813, 823-24 (10th Cir. 2013) (unpublished) (ALJ's omission of uncontroverted evidence supporting claimant's allegations of pain went "beyond the merely technical" and called into question whether the appropriate standards had been applied); *Sheppard v. Astrue*, 426 Fed. Appx. 608, 610-11 (10th Cir. 2011) (evidence that tended to show claimant's worsening depression should have been discussed by ALJ).

The ALJ also did not discuss significantly probative treating evidence after the amended alleged onset date, such as the treatment notes from the September 15, 2010 office visit. (R. 25-27, 405-08). The ALJ did not note Dr. Tucker's findings that Mackey had diffuse joint tenderness of most joints, marked osteoarthritis changes of his hands and feet, and markedly decreased range of motion of his cervical spine and lumbar spine. (R. 25-27, 407). The ALJ's failure to discuss these objective medical findings makes it difficult to follow his reasoning when he stated that the medical records did not support a finding of severe arthritis. (R. 26). *Compare Keyes-Zachary v. Astrue*, 695 F.3d 11156, 1167 (10th Cir. 2012) (ALJ's explanation of weight given to treating physician opinion evidence is adequate if it allows a subsequent reviewer to follow it).

13

The Commissioner argues that the ALJ followed the regulatory process and found that Dr. Tucker's opinion was not supported by the evidence of the record and was inconsistent with the evidence from Dr. Quadeer's examination and report. Commissioner's Brief, Dkt. #25, p. 5. As stated above, the ALJ did not discuss all of the objective medical findings of Dr. Tucker that arguably supported his opinions, and therefore the ALJ's conclusion that the medical records did not support a finding of severe arthritis is hollow. Additionally, while inconsistency with a one-time consulting examination can be a legitimate factor for finding that a treating opinion should be given reduced weight, there must be a legitimate reason for giving an examining opinion more weight than a treating physician opinion. Here, the ALJ simply noted inconsistent findings, such as Dr. Quadeer's finding of no swelling of the hands' small joints, but he did not explain why he chose to believe Dr. Quadeer's one-time examination findings over the longitudinal findings of Dr. Tucker from examinations of Mackey that took place over several years. (R. 26-27). *See Sissom v. Colvin*, 512 Fed. Appx. 762, (10th Cir. 2013) (unpublished) (ALJ erred by giving no reason for accepting results of examining physician and opinions of nonexamining physicians over treating physician opinion). *Jones*, 514 Fed. Appx. at 819 (ALJ's reasons for rejecting opinion of a treating physician in favor of the opinion of a nonexamining physician were not legally sufficient); *Daniell v. Astrue*, 384 Fed. Appx. 798, 803 (10th Cir. 2010) (unpublished) (rejecting ALJ's criticism of format of treating physician report when nonexamining consultant report was in similar format).

The undersigned finds that some of the ALJ's explicit reasons for giving Dr. Tucker's opinions little weight were not legitimate. For example, Dr. Tucker said that Mackey could frequently lift up to 10 pounds, but could never lift more. (R. 420). The ALJ stated that this seemed incongruous. (R. 26). The undersigned recognizes that most physicians will state a lifting

14

limitation in terms of one weight that can be lifted occasionally and a lesser weight that can be lifted frequently, but the undersigned does not find it incongruous to simply state that a claimant can lift one weight frequently and should not lift more even occasionally. *See, e.g., Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1177 (10th Cir. 2014) (finding ALJ's reasons for discounting opinion of treating psychiatrist inadequate in part because ALJ's claimed inconsistencies were not substantial); *Langley*, 373 F.3d at 1121-23 (finding some of ALJ's reasons for discounting opinion evidence were "not supported by the record").

The ALJ then stated that Mackey's "impairments do not involve any internal organs. Therefore, Dr. Tucker's projection of the claimant's being absent four days a month every month seems dubious." (R. 26-27). The undersigned agrees that Mackey made no claims of disability related to internal organs, but the undersigned finds that is not a requirement for disability, and it is not a requirement before a treating physician can find that a claimant will miss days due to pain, which appears to be the basis of Dr. Tucker's opinion. (R. 421).

The ALJ also said that there was nothing in the medical records that suggested that Mackey was limited to standing, walking, or sitting for only 30 minutes at a time. (R. 27). The Commissioner suggests that this was a proper finding by the ALJ that Dr. Tucker's opinion was not supported by evidence. Commissioner's Brief, Dkt. #25, p. 6. The ALJ, however, did not note that Dr. Tucker himself on the form indicated that his opinions were supported by objective findings of reduced range of motion, muscles spasms, tenderness, abnormal gait, and muscle weakness, together with x-rays. (R. 421). If the ALJ meant to state that these objective findings cited by Dr. Tucker did not support his opinion that Mackey could only walk, stand, or sit for 30 minutes at a time, then the ALJ needed to make that reason more clear, and he needed to give an adequate explanation supporting his reasoning. *Sissom*, 512 Fed. Appx. at 767 (ALJ's decision

was not sufficiently specific to make clear the reasons for the weight given treating physician opinion); *Zemp-Bacher v. Astrue*, 477 Fed. Appx. 492, 496 (10th Cir. 2012) (unpublished) (reversing in part because court could not determine how a treating physician opinion was inconsistent with treatment records); *Lopez v. Astrue*, 371 Fed. Appx. 887, 891 (unpublished) (ALJ's reasons for either discounting or rejecting treating physician opinion were not supported by substantial evidence).

In *Langley*, the Tenth Circuit noted that the ALJ had said that he rejected the treating physician's opinions because they were not supported by objective evidence, including his own records, and the court agreed that this was a facially valid reason. *Langley*, 373 F.3d at 1121-22. The court, however, saw no "obvious inconsistencies" either with his own records or with other medical records. *Id.* at 1122. Because the ALJ had not explained or identified what the claimed inconsistencies were, the reviewing court had no ability to meaningfully review the ALJ's findings. *Id.* at 1123.

Here, the ALJ needed to discuss the opinion evidence with reference to the Section 404.1527 factors. The Section 404.1527(c) factors are:

> length of the treatment relationship and the frequency of examination;
> nature and extent of the treatment relationship;
> supportability, including citation to objective medical evidence;
> consistency with the record as a whole;
> specialization; and
> other factors brought to the ALJ's attention.

20 C.F.R. § 404.1527(c). The Tenth Circuit does not require that all factors be explicitly discussed by the ALJ. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). On remand, however, a more specific discussion by the ALJ of the Section 404.1527(c) factors would be helpful to any needed additional review.

Remand is necessary so that the ALJ can discuss the favorable treating evidence from Dr. Tucker and assess the opinion evidence of Dr. Tucker in accordance with required law, including the factors of Section 404.1527.

### Conclusion

Because the ALJ erred in his consideration of the evidence of Dr. Tucker, the Court **REVERSES and REMANDS** the ALJ's March 8, 2013 decision for further consideration.

The Court takes no position on the merits of Mackey's disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Based on the foregoing, the March 8, 2013 decision of the Commissioner denying disability benefits to Claimant is **REVERSED AND REMANDED.**

Dated this 25th day of March 2016.

_____
Paul J. Cleary
United States Magistrate Judge